# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

PEGGY ANNETTE CAIN, )
)
       Plaintiff, )
)
v. ) Case No. 16-CV-00640-GKF-FHM
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
       Defendant. )

## OPINION AND ORDER

Before the court is the Report and Recommendation of the United States Magistrate Judge reviewing the decision of the Commissioner of the Social Security Administration to deny disability benefits to Peggy Annette Cain [Doc. #20]. The Magistrate Judge recommends the Commissioner's denial of benefits be affirmed. Plaintiff Cain objects to the Report and Recommendation [Doc. #21]. For the reasons set forth below, the court respectfully reverses the Commissioner's denial of benefits, and remands this case for further proceedings in accordance with this order.

### I.    Procedural Background

Peggy Annette Cain applied for disability benefits beginning on July 26, 2011. The Social Security Administration ("SSA") initially denied Cain's claim, and again upon reconsideration. As a result, Cain filed a written request for rehearing, and a hearing was held before Administrative Law Judge ("ALJ") John W. Belcher on January 21, 2015. On May 14, 2015, the ALJ issued a written decision finding that Cain was not under a disability as defined in the Social Security Act, and denying disability benefits. *See* [Doc. #10, pp. 17-27]. The SSA Appeals Council denied

Cain's request for review on August 12, 2016. Because the SSA Appeals Council denied Cain's request, the decision of the ALJ constitutes the final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481. On October 31, 2017, U.S. Magistrate Judge Frank H. McCarthy issued a Report and Recommendation recommending that the decision of the Commissioner that Cain was not disabled be affirmed. *See* [Doc. #20]. Cain objected to the Report and Recommendation on November 28, 2017, requiring review by this court. *See* [Doc. #21].

II.     **Standard of Review**

Pursuant to Fed. R. Civ. P. 72(b)(3), the court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." In the disability benefits context, *de novo* review is limited to determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)). It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On review, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

III.    **Analysis**

Cain objects to the Report and Recommendation on three (3) separate bases: (1) the failure to find error in the ALJ's credibility analysis in light of medical evidence; (2) the failure to find

error in the inclusion of level-three reasoning jobs in the ALJ's "step-five" analysis[1]; and (3) the failure to find error in the omission of findings regarding the sufficiency of work in the national economy in the ALJ's "step-five" analysis. The court will separately consider each objection.

A.     *Failure to Find Error in the ALJ's Credibility Analysis*

Cain first objects to the Report and Recommendation based on a failure to find error in the ALJ's credibility analysis in light of the medical evidence. [Doc. #21, p. 1]. However, Cain includes no argument in support of the objection.

The Tenth Circuit applies waiver principles developed in other litigation contexts to social security cases. *See Berna v. Chater,* 101 F.3d 631, 632 (10th Cir. 1996). "[W]aiver may result from the disability claimant's failure to (1) raise issues before the magistrate judge, (2) object adequately to the magistrate judge's recommendation, (3) preserve issues in the district court as a general matter, or (4) present issues properly to [the Tenth Circuit]." *Id.* at 632-33 (internal citations omitted) (quoting *James v. Chater,* 96 F.3d 1341, 1344 (10th Cir. 1996)). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific

---

[1] A five-step evaluation process applies to determine a claimant's disability. *See* 20 C.F.R. § 404.1520(a). "Step one determines whether the claimant is presently engaged in substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Step two determines "whether the claimant has a medically severe impairment or combination of impairments." *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)). "Step three 'determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity,' pursuant to 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986))." *Williams,* 844 F.2d at 751 (quoting *Bowen*, 482 U.S. at 141). Step four determines whether the "impairment prevents [claimant] from performing work he has performed in the past." *Williams,* 844 F.2d at 751 (quoting *Bowen*, 482 U.S. at 141). Finally, step five determines "whether the claimant has the residual functional capacity (RFC) 'to perform other work in the national economy in view of his age, education, and work experience.'" *Id.* (quoting *Bowen*, 482 U.S. at 142).

error in the inclusion of level-three reasoning jobs in the ALJ's "step-five" analysis[1]; and (3) the failure to find error in the omission of findings regarding the sufficiency of work in the national economy in the ALJ's "step-five" analysis. The court will separately consider each objection.

A.     *Failure to Find Error in the ALJ's Credibility Analysis*

Cain first objects to the Report and Recommendation based on a failure to find error in the ALJ's credibility analysis in light of the medical evidence. [Doc. #21, p. 1]. However, Cain includes no argument in support of the objection.

The Tenth Circuit applies waiver principles developed in other litigation contexts to social security cases. *See Berna v. Chater,* 101 F.3d 631, 632 (10th Cir. 1996). "[W]aiver may result from the disability claimant's failure to (1) raise issues before the magistrate judge, (2) object adequately to the magistrate judge's recommendation, (3) preserve issues in the district court as a general matter, or (4) present issues properly to [the Tenth Circuit]." *Id.* at 632-33 (internal citations omitted) (quoting *James v. Chater,* 96 F.3d 1341, 1344 (10th Cir. 1996)). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific

---

[1] A five-step evaluation process applies to determine a claimant's disability. *See* 20 C.F.R. § 404.1520(a). "Step one determines whether the claimant is presently engaged in substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Step two determines "whether the claimant has a medically severe impairment or combination of impairments." *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)). "Step three 'determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity,' pursuant to 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986))." *Williams,* 844 F.2d at 751 (quoting *Bowen*, 482 U.S. at 141). Step four determines whether the "impairment prevents [claimant] from performing work he has performed in the past." *Williams,* 844 F.2d at 751 (quoting *Bowen*, 482 U.S. at 141). Finally, step five determines "whether the claimant has the residual functional capacity (RFC) 'to perform other work in the national economy in view of his age, education, and work experience.'" *Id.* (quoting *Bowen*, 482 U.S. at 142).

to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.,* 73 F.3d 1057, 1060 (10th Cir. 1996).

Cain did not brief her objection to the Report and Recommendation's failure to find error based on the ALJ's credibility analysis, and thus has not satisfied the specificity required to preserve an issue for de novo review by this court. Thus, the issue is waived, and the court will not consider this objection.

   *B.*  *Inclusion of Level-Three Reasoning Jobs in "Step-Five" Analysis*

Cain objects to the Report & Recommendation's reliance on two jobs—document specialist and surveillance system monitor—both of which require a reasoning level of three based on the Dictionary of Occupational Titles ("DOT"). *See* DOT §§ 249.587-018 and 379.367-010. Cain argues that the inclusion of jobs requiring level-three reasoning is inconsistent with the ALJ's residual functional capacity ("RFC") finding that "[Cain] can perform simple routine repetitive tasks, contact with supervisors and coworkers should be superficial, and she should avoid contact with the public." [Doc. #10, p. 21]. The court agrees.

The DOT defines occupations through components, including general education development ("GED"). *DOT App. C, Components of the Definition Trailer,* 1991 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* Each division is ranked on a scale from one to six. *Id.* Level-three reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

The Tenth Circuit has stated that a RFC limitation to "simple and routine work tasks," "seems inconsistent with the demands of level-three reasoning." *Hackett v. Barnhart,* 395 F.3d

1168, 1176 (10th Cir. 2005). Rather, a RFC limitation to "simple and routine work tasks" is "more consistent" with level-two reasoning.[2] *Id.* Due to the "apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the [vocational expert]," the Tenth Circuit reversed and remanded the ALJ's decision to allow the ALJ to address the conflict. *Id.* at 1176-77. *See also Pritchett v. Astrue*, 220 F. App'x 790, 793 (10th Cir. 2007) ("As in *Hackett,* a level-three reasoning requirement seems inconsistent with the ALJ's conclusion that plaintiff can only do jobs which present simple, repetitive and routine tasks."); *Garcia v. Barnhart*, 188 F. App'x 760, 767 (10th Cir. 2006).

Here, as in *Hackett*, an apparent conflict exists between Cain's ability to perform only "simple routine repetitive tasks," and the level-three reasoning required by two of the jobs identified as appropriate for Cain—document specialist and surveillance system monitor. Thus, under *Hackett,* the ALJ's failure to resolve the conflict constitutes reversible error and requires reversal and remand for the ALJ to consider the apparent conflict. *Hackett,* 395 F.3d at 1176.

The Commissioner urges the court to conclude that, in addition to GED, specific vocational preparation ("SVP") is an appropriate indicator of the complexity of a job, and because the vocational expert, Lisa Cox ("VE"), relied on SVP, the ALJ's decision was not in error.[3] However,

---

[2] Level-two reasoning requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *DOT App. C, Components of the Definition Trailer,* 1991 WL 688702.

[3] SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *DOT App. C, Components of the Definition Trailer,* 1991 WL 688702. SVP levels range from one, requiring a short demonstration only, to nine, requiring over ten years. Both document specialist and surveillance system monitor have a SVP level of two, which requires

at least one Oklahoma federal court has previously rejected a similar argument. *See Burks v. Astrue,* No. CIV-07-360-D, 2008 WL 1805521, at *5 n.3 (W.D. Okla. Apr. 18, 2008); *see also Clark v. Colvin,* No. CIV-14-1294-L, 2016 WL 1171153, at *6 (W.D. Okla. Feb. 26, 2016) ("The undersigned declines to conclude, as urged by the Commissioner, that GED reasoning levels 'can be disregarded when addressing the mental demands of jobs listed in the DOT.'") (quoting *Ward v. Colvin*, No. CIV-14-1141-M, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015)). Further, in the Tenth Circuit, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Hackett*, 395 F.3d at 1175 (applying *Haddock* to reasoning level discrepancy). The conflict must be explained "irrespective of how the conflict was identified," and regardless of whether the vocational expert testifies to a discrepancy. *See Hall v. Berryhill*, No. CIV-16-206-RAW-SPS, 2017 WL 4052825, at *3 (E.D. Okla. Aug. 22, 2017) (emphasis removed from original) (quoting SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)).

Here, although not identified by the VE, a conflict actually existed between the DOT and expert testimony. Although the VE testified to her belief that, based on Cain's RFC, Cain could work as a document specialist and surveillance system monitor, the VE did not refer to the GED of those positions in her testimony or identify any conflicts between her testimony and the DOT. *See* [Doc. #10, pp. 60-65]. Nor did the ALJ seek to elicit testimony from the VE regarding how level-three reasoning was consistent with Cain's RFC indicating an ability to perform "simple

---

training of a duration of "[a]nything beyond short demonstration up to and including 1 month." *Id.*

routine repetitive tasks."[4] Thus, based on this evidence, the court concludes that the ALJ failed to provide a "reasonable explanation" in support of his conclusion that "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles," [Doc. #10, p. 26], and an unresolved conflict exists between Cain's ability to perform "simple routine repetitive tasks" and level-three reasoning.

Nor is the court persuaded by the Commissioner's citation to two unpublished decisions of the Tenth Circuit Court of Appeals for the proposition that reliance on the SVP level, rather than GED, is appropriate because GED designation does not describe the mental skill requirement of an occupation, but rather the "general educational background that would ordinarily make an individual suitable for the job." [Doc. #22, p. 4 (citing *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development.") and *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) ("Job descriptions in the Dictionary of Occupational Titles contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job."))]. First, in *Hackett*, the occupations at issue also had SVP levels of two, and the Tenth Circuit nevertheless held that remand was necessary. *Hackett*, 395

---

[4] The ALJ did request of the VE that "[i]f the information you provide to me is different from that contained in the Dictionary of Occupational Titles or its companion titles, Selective Characteristics of Occupations, could you please inform me of how it is different and why?" [Doc. #10, pp. 61-62]. However, the ALJ made no further inquiries following the VE's testimony as to the occupations that Cain could perform in the national economy, nor did the VE identify any differences in her testimony from the DOT.

F.3d at 1176. Further, in *Anderson*, the vocational expert identified other jobs that did not conflict with the claimant's RFC and, in *Mounts,* no genuine dispute existed that the claimant possessed the GED to perform the jobs—thus, any error was harmless. *See Hall,* 2017 WL 4052825, at *4; *Urias v. Berryhill*, CIV-16-1063, 2017 WL 3025926, at *10 (D.N.M. July 11, 2017). Here, the error is not harmless.[5] Finally, to the extent it might be said that *Anderson* and *Mounts* differ from *Hackett,* the court is compelled to follow the Tenth Circuit's published decision in *Hackett. See Paddelty v. Colvin*, Case No. CIV-14-891-D, 2016 WL 3647697, at *3 (W.D. Okla. July 1, 2016) ("Although the Court finds it difficult to reconcile here the separate approaches represented by *Hackett* and *Anderson*, it is bound to follow the clear dictates of the circuit's published decision in *Hackett* . . . . Indeed, courts in this district have uniformly followed *Hackett* when the Commissioner has presented them with similar arguments relying on *Anderson*."). Thus, an apparent conflict exists between Cain's ability to perform only "simple routine repetitive tasks," and the level-three reasoning required by two of the three jobs identified that Cain would be able to perform—document specialist and surveillance system monitor.

  C.  *Sufficiency of Work in the National Economy*

  The ALJ's decision may nevertheless be upheld, despite the ALJ's failure to elicit a reasonable explanation for the apparent conflict in Cain's RFC and the level-three reasoning required of a document specialist and surveillance system monitor systems, if other identified positions exist in significant numbers in the national economy that do not conflict with Cain's RFC. *See, e.g., Keyes-Zachary v. Colvin,* No. 13-CV-0638-CVE-FHM, 2015 WL 65528 (N.D.

---

[5] Ms. Cox identified one additional job which Cain would be capable of performing—touch up screener, DOT § 726.684-110. However, for the reasons discussed herein, the ALJ's reliance on the availability of touch up screener positions was not supported by substantial evidence.

Okla. Jan. 5, 2015) ("If 'a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet' exists in the national economy for those occupations about which there is no conflict between the VE's testimony and the DOT, the Tenth Circuit has upheld the ALJ's finding of no disability.") (alteration in original) (quoting *Conger v. Astrue,* 453 F. App'x 821, 828 (10th Cir. 2011)); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009); *Chrismon v. Colvin,* 531 F. App'x 893 (10th Cir. 2013); *Alstatt v. Colvin*, No. CIV-13-0675-HE, 2014 WL 1668599, at *5 (W.D. Okla. Apr. 24, 2014). The VE identified only one additional job which Cain would be capable of performing—touch up screener, DOT § 726.684-110. Cain does not dispute that a person of her age, education, work experience, and residual functional capacity could perform the job.[6] However, Cain argues that the ALJ erred in relying on the touch up screener position because the job does not exist in "significant numbers" in the national economy, as the VE testified that 15,900 jobs exist in the national economy.

The ALJ made no specific findings that each position identified by the VE existed in significant numbers in the national economy. *See* [Doc. 10, p. 26]. Rather, the ALJ (and Report and Recommendation) relied on the aggregate number of the three positions. However, for the reasons discussed herein, the ALJ's reliance on the document specialist and surveillance system monitor position was in error, and this court will consider only whether there is substantial evidence that the touch up screener position exists in significant numbers in the national economy.

The Tenth Circuit has

> made it clear that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation "should

---

[6] Pursuant to the DOT definition, a touch up screener position requires a level-two reasoning ability and also has a SVP of two. *See* DOT § 726.684-110.

> ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation."

*Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir. 1992)). However, this general rule is not without exception, as the *Allen* court recognized that

> it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Id.* at 1145. Thus, the district court may supply a missing dispositive finding, but only in "exceptional circumstance[s]." *Id.*

Here, the ALJ did not explicitly evaluate or engage in a fact-specific consideration of the significance of 15,900 touch up screener jobs in the national economy. Thus, the court will next consider whether it is appropriate to supply the missing finding under the harmless error rubric.

The court is not persuaded that it is appropriate to find harmless error in these circumstances. In *Allen*, the court declined to conclude that one hundred surveillance jobs constituted a "significant number" in the national economy under the harmless error rubric. *Id.* at 1144-45. In *Norris v. Barnhart,* the Tenth Circuit declined to conclude as a matter of law that two positions, which existed 65,000 to 85,0000 nationally and 125,000 nationally, respectively, were present in significant numbers and remanded for the ALJ "to give consideration to the factors that should direct an ALJ's resolution of the significant number inquiry." *Norris v. Barnhart,* 197 F. App'x 771, 777 (10th Cir. 2006).

However, in *Rogers v. Astrue*, the Tenth Circuit implicitly found that 11,000 jobs hand packager jobs that existed in the national economy were present in significant numbers, although in that case, the claimant "d[id] not take issue with" the available number of jobs. *Rogers v. Astrue,*

312 F. App'x 138, 142 (10th Cir. 2009). In *Stokes v. Astrue*, considering 11,000 jobs available regionally and 152,000 jobs available nationally, the court concluded that "[no] reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country." *Stokes v. Astrue,* 274 F. App'x 675, 684 (10th Cir. 2008).

The 15,900 touch up screener jobs present in the national economy is more than the 11,000 national positions implicitly found to exist in significant numbers in *Rogers*, but less than the 65,000 positions present in *Norris* where the court declined to find national significance as a matter of law.[7] In light of the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in an "exceptional circumstance," this court declines to apply harmless error to conclude that there are a "significant

---

[7] The Commissioner cites numerous district court cases affirming the ALJ decisions "with similar numbers." However, the Commissioner's argument relies on aggregate numbers of all three positions identified by the VE, rather than only the touch up screener position. *See* [Doc. #22, pp. 7-8]. Only one of the district court cases cited—*Jones v. Colvin*—considered the numerical significance of a position present in the national economy less than 15,900. *See Jones v. Colvin*, No. CIV-14-170-RAW-KEW, 2015 WL 5573074 (E.D. Okla. Sept. 22, 2015) (15,520 positions nationally). Respectfully, the court is not persuaded, as the majority of courts in this district considering similar numbers decline to determine numerical significance as a matter of law. *See, e.g., Keyes-Zachary,* 2015 WL 65528, at **7-8 (80,000 jobs nationally); *Lowery v. Colvin*, No. 14-CV-310-JHP-FHM, 2015 WL 5775212, at *2 (N.D. Okla. Sept. 29, 2015) (83,500 jobs nationally); *Johnson v. Berryhill,* No. 15-CV-0421-CVE-TLW, 2017 WL 924477 (N.D. Okla. Mar. 8, 2017) (195,000 jobs nationally); *McAlister v. Berryhill*, No. 15-CV-0387-CVE-TLW, 2017 WL 833046 (N.D Okla. Mar. 2, 2017); *see also Hinman v. Astrue*, No. CIV-09-136-F, 2010 WL 1610475, at *4 (W.D. Okla. Mar. 29, 2010) ("The Commissioner does not rebut [plaintiff's] contention that the two occupations identified by incorrect DOT citations cannot be considered when determining whether the ALJ's step five finding is based on substantial evidence. But the Commissioner does urge this Court to assume that instead of 'Press-Machine operator,' the second job identified by the VE, the VE intended to say 'Press Hand,' a job in the knitting industry listed at DOT § 583.687-010. The Commissioner would then have this Court supply its own factual determination that a significant number of Press Hand jobs exists in the regional and national economies. Such a result would be, however, 'an improper exercise in judicial factfinding rather than a proper application of harmless-error principles.'") (quoting *Allen*, 357 F.3d at 1145).

number" of jobs available to Cain in the national economy.  Thus, the ALJ's step-five findings were in error, as there was not a finding a significant number of jobs having requirements which Cain is able to meet exists in the national economy.

## IV.     Conclusion

For the reasons set forth above, the court concludes that the ALJ's findings at step five were incomplete and, therefore, in error.  Thus, the court must reverse and remand.  On remand, the ALJ must elicit a reasonable explanation for the apparent conflict between Cain's ability to perform only "simple routine repetitive tasks" and the level-three reasoning required for a document specialist or surveillance system monitor position.  Additionally, or alternatively, the ALJ must determine, based on fact-specific considerations, whether a "significant number" of touch up screener positions exist in the national economy.

WHEREFORE, the court rejects the Report and Recommendation [Doc. #20], reverses the Commissioner's denial of benefits, and remands this case for further proceedings in accordance with this order.

DATED this 9th day of March, 2018.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE